MJU/SEA                           F-4625

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

HELEN HAYHURST,                          )
                                         )
                Plaintiff,               )
                                         )
vs.                                      )          Court No.:  14 CV 2196
                                         )
303 TAXI, LLC and JAROSLAVAS BIELIAUSKAS, )
Individually and as agent of 303 TAXI, LLC, )
                                         )
                Defendants.              )

## STATEMENT OF UNDISPUTED FACTS

NOW COMES Defendant, 303 TAXI, LLC, by and through its attorneys, URGO &

NUGENT, Ltd., and as for its Statement of Undisputed Facts in support of its Motion for

Summary Judgment, states as follows.

1.    That on March 27, 2014, the Plaintiff, HELEN HAYHURST, filed a Complaint at Law

      alleging she sustained injuries as a result of an automobile accident occurring on

      southbound Interstate 294 at or near mile marker 41 in the Chicagoland area, County of

      Cook, and State of Illinois on June 10, 2013 while she was a passenger in a taxicab

      operated by JAROSLAVAS BIELIAUSKAS.

2.    In her Complaint, Plaintiff asserts a claim against 303 TAXI, LLC under a theory of

      respondeat superior liability alleging that JAROSLAVAS BIELIAUSKAS was an agent

      of 303 TAXI, LLC.

3.    That on April 13, 2014, 303 TAXI, LLC was served with a summons and the Complaint.

4.    That on May 9, 2014, 303 TAXI, LLC filed its Appearance in this matter.

5.   That on May 12, 2014, 303 TAXI, LLC filed its Answer to the Complaint denying all

material allegations against it including those allegations tending to establish respondeat

superior liability.

6.   On July 17, 2014, 303 TAXI, LLC sent a letter to Plaintiff's attorney with a copy of the

"Dispatch Equipment Lease" between JAROSLAVAS BIELIAUSKAS and 303 TAXI,

LLC which made clear that the only relationship between those two parties was that of

lessee and lessor. In that letter, 303 TAXI made clear that it had no control over

JAROSLAVAS BIELIAUSKAS and was not in any way liable for any negligence on the

part of JAROSLAVAS BIELIAUSKAS and requested that Plaintiff voluntarily dismiss

303 TAXI, LLC as a result. Attached hereto as Exhibit A is a true and correct copy of

the July 17, 2014 letter with exhibits omitted. Attached hereto as Exhibit B is a true and

correct copy of the "Dispatch Equipment Lease."

7.   On August 4, 2014, counsel for 303 TAXI, LLC sent an e-mail to Plaintiff's counsel

requesting a response to the July 17, 2014 letter regarding voluntary dismissal as it had

not yet received a clear answer from Plaintiff's counsel regarding the possibility of a

voluntary dismissal. Attached hereto as Exhibit C is a true and correct copy of the

August 4, 2014 e-mail with attachments omitted.

8.   On August 22, 2014, having still no response from Plaintiff's counsel, counsel for 303

TAXI, LLC sent yet another letter to Plaintiff's counsel again attaching a copy of the

"Dispatch Equipment Lease" and also including the certificate of insurance, insurance

declarations page, and other insurance policy information, showing that JAROSLAVAS

BIELIAUSKAS is insured under a policy of insurance issued by Starnet Insurance

covering the subject vehicle during the relevant time period. The letter explicitly states

2

that it was sent in order to avoid the cost and expense of bringing a motion before the Court and in the interest of judicial economy. Attached hereto as Exhibit D is a true and correct copy of the August 22, 2014 letter with exhibits omitted. Attached hereto as Exhibit E is a true and correct copy of the the certificate of insurance, insurance declarations page, and other insurance policy information which was attached to the August 22, 2014 letter.

9. On September 12, 2014, having still received no response from Plaintiff's counsel regarding voluntary dismissal of 303 TAXI, LLC, counsel for 303 TAXI, LLC, sent another e-mail to counsel requesting a response to the request for voluntary dismissal of 303 TAXI, LLC, explicitly in order to avoid the cost and expense of a motion for summary judgment and in the interest of judicial economy. Attached hereto as Exhibit F is a true and correct copy of the September 12, 2014 e-mail with exhibits omitted.

10. That early on in the litigation of this matter 303 TAXI, LLC took the position that it was merely a dispatch company, was not an employer or principal of JAROSLAVAS BIELIAUSKAS, and had no control over JAROSLAVAS BIELIAUSKAS such that it cannot be liable under a theory of repondeat superior liability, and 303 TAXI, LLC has never abandoned this position.

11. Despite its numerous requests and diligent efforts toward voluntary dismissal with an eye to avoid using the Court's time and resources in unnecessary motion practice, counsel for 303 TAXI, LLC had not received an answer from Plaintiff's counsel one way or another with regards to the voluntary dismissal of 303 TAXI, LLC. As a result, on December 1, 2014 (refiled on December 11, 2014 with leave of Court), counsel for Defendants filed a

timely motion for summary judgment requesting that 303 TAXI, LLC be dismissed from the lawsuit with prejudice as an improper party.

12.    303 TAXI, LLC is a taxi dispatch company which leases certain dispatch equipment for use of taxi drivers. Attached hereto as Exhibit G is a true and correct copy of the Affidavit of Anre Nisenboim; See ¶2.

13.    JAROSLAVAS BIELIAUSKAS was not an employee of 303 TAXI, LLC on or about June 10, 2013. Ex. G, Nisenboim Aff., ¶3.

14.    303 TAXI, LLC did not pay salary to JAROSLAVAS BIELIAUSKAS. Ex. G, Nisenboim Aff., ¶4.

15.    303 TAXI, LLC did not withhold taxes on behalf of JAROSLAVAS BIELIAUSKAS. Ex. G, Nisenboim Aff., ¶5.

16.    303 TAXI, LLC had no authority to determine the hours that the cab was operated by JAROSLAVAS BIELIAUSKAS. Ex. G, Nisenboim Aff., ¶6.

17.    303 TAXI, LLC had no authority to determine which customers JAROSLAVAS BIELIAUSKAS picked up. Ex. G, Nisenboim Aff., ¶7.

18.    303 TAXI, LLC had no right to share in any profits or losses made through the use of the medallion or the cab by JAROSLAVAS BIELIAUSKAS. Ex. G, Nisenboim Aff., ¶8.

19.    JAROSLAVAS BIELIAUSKAS was not required to report the location of the cab while driving, maintain a trip sheet, keep a written record of fares, or report fares collected to 303 TAXI, LLC. Ex. G, Nisenboim Aff., ¶9.

20.    303 TAXI, LLC was not the owner of the vehicle operated by JAROSLAVAS BIELIAUSKAS at aforesaid time. Ex. G, Nisenboim Aff., ¶10.

21.   303 TAXI, LLC did not pay for gas usage during cab operations nor controlled where gas could be purchased by JAROSLAVAS BIELIAUSKAS.  Ex. G, Nisenboim Aff., ¶11.

22.   303 TAXI, LLC was not responsible for maintenance of vehicle and did not require JAROSLAVAS BIELIAUSKAS to use specific maintenance services.  Ex. G, Nisenboim Aff., ¶12.

WHEREFORE the Defendant, 303 TAXI, LLC, respectfully requests this Honorable Court to enter an order granting summary judgment in its favor, dismissing 303 TAXI, LLC with prejudice and for any such other and further relief as this Honorable Court deems just and appropriate.

Respectfully submitted

**URGO & NUGENT, LTD.**

One of the Attorneys for Defendant
303 Taxi, LLC

**URGO & NUGENT, LTD.**
2 N. LaSalle Street
Suite 1800
Chicago, IL 60602
(312) 263-6635

**URGO & NUGENT, LTD.**
ATTORNEYS AT LAW
TWO NORTH LASALLE STREET
SUITE 1800
CHICAGO, IL 60602
TELEPHONE (312) 263-6635
FACSIMILE (312) 263-1329

330 South Naperville Road Ste. 240
Wheaton, IL 60187
Telephone (630) 653-0123

IN REPLY
Refer to File No.: **F-4625**

July 17, 2014

Mr. Joel F. Handler
One East Wacker Drive, Suite 510
Chicago, IL 60601

RE:    Helen Hayhurst vs. 303 Taxi, LLC. and Jaroslavas Bieliauskas
      Court No.:    14-CV-2196

Dear Mr. Handler:

Enclosed please find a copy of the Dispatch Equipment Lease Agreement between Jaroslavas Bieliauskas and 303 Taxi, LLC which outlines the relationship between the parties.

As you will see, 303 Taxi, LLC simply leased certain dispatch equipment, including a display terminal, radio, and meter to Mr. Bieliauskas, and as made explicit in paragraph 6, the only relationship between 303 Taxi, LLC and Mr. Bieliauskas was that of lessor and lessee. Paragraph 6 also makes clear that Mr. Bieliauskas was solely responsible for the operation of the taxicab, which he owned, was responsible for all tax obligations in connection with the operation of the taxicab, and was responsible for any liability in connection with his operation of the taxicab.

303 Taxi, LLC was only responsible for routine maintenance of the leased dispatch equipment. Mr. Bieliauskas was free to decide whether to accept or decline a fare, and 303 Taxi, LLC had no control over his route should he choose accept a fare. 303 Taxi did not hire, train, disciple or exercise any amount of control over Mr. Bieliauskas in connection with Mr. Bieliauskas' operation of the taxicab.

Therefore, at the time of the incident alleged in the Complaint, Mr. Bieliauskas was not acting as an employee or agent of 303 Taxi, LLC, and we request that you voluntarily dismiss 303 Taxi, LLC from this lawsuit so that we may avoid unnecessary motion practice.



Please contact the undersigned at your earliest convenience to discuss the matter.

Very truly yours,
**URGO & NUGENT, LTD.**

Sarah E. Albrecht

SEA
Enclosures

## DISPATCH EQUIPMENT LEASE AGREEMENT

This Agreement ("Agreement") is entered into as of the date set forth below by and between JAROSLAV BIELIAUSKAS an Owner of Taxicab Medallion No #344 the "Taxicab") and 303 Taxi, LLC d/b/a 303 Cab Association ("Lessor"): *VAN*

     Lessee hereby agrees to lease from Lessor the Dispatch Equipment herein described in accordance with the following terms and conditions:

    1.   <u>Dispatch Equipment</u>. The Dispatch Equipment subject to this Lease Agreement consists of the following specific items identified by serial number:

| Quantity | | | Lessee's Initials | |
|---|---|---|---|---|
| | | *2310100 1111 M056* | | *08-05-13* |
| _1_ | Display Terminal | *2310100 1304 M447 OK* | *(JB)* | |
| | Keypad | | ( ) | |
| _1_ | Radio | *90900161* | *OK (JB)* | |
| _1_ | Meter | *51297* | *OK (JB)* | *10-21-2013* |
| | MCU Box | | ( ) | |
| | GPS | | ( ) | |
| | Credit Card Swipe Box | | ( ) | |
| | Control Box | | ( ) | |
| | Computer Dispatch Terminal | | ( ) | |
| | Antenna | | ( ) | |

together with all associated wiring and components, replacement parts, enhancements, replacement equipment, accessions and all proceeds of the foregoing (hereinafter "Dispatch Equipment"). Lessee's initials shall acknowledge receipt of each such item.

    2.   <u>Installation</u>. Lessor agrees to install the Dispatch Equipment in the Taxicab identified above free of charge to Lessee one time only. If Lessee changes vehicles, Lessee shall pay Lessor an equipment transfer fee to install the Dispatch Equipment in the replacement vehicle. The current transfer fee is $225, which amount may be increased on notice to Lessee.

    3.   <u>Equipment Lease Fees</u>. Lessee hereby agrees to lease Dispatch Equipment (Model # 2008) from Lessor for use in the Taxicab. Lessee shall pay the lease fees for the Dispatch


EXHIBIT
B

the Dispatch Equipment at such times and in such amounts as provided in Exhibit A attached hereto, which may be changed by Lessor at any time upon notice to Lessee at the Lessor's principal office. The lease payments shall commence on the date on which the Dispatch Equipment is installed on Lessee' vehicle and terminate on the date on which the final lease payment is made. After the final lease payment is made, Lessee shall have the option to purchase the Dispatch Equipment for One Dollar by notifying Lessor within 30 days thereof.

4. _Lessee Responsibility._ Lessee (a) shall be wholly responsible for the care and safekeeping of the Dispatch Equipment including the cost of any replacement parts except as otherwise herein expressly provided, and (b) assumes all risk with respect to the theft, loss, damage by any means, defacement or any other deliberate or negligent act that damages any portion of the Dispatch Equipment. Lessee will not be responsible for normal wear and tear, normal maintenance, and defects covered by any manufacturer's warranty. Lessee agrees that all work, maintenance and repairs will be performed by a contractor designated by Lessor, which contractor is COM/RAD Radio, 1781 Oakton, Des Plaines, Illinois (847-296-2850) until Lessor gives Lessee notice of a replacement contractor.

5. _Lessor Responsibility._ Lessor will perform routine maintenance on the Dispatch Equipment and components so long as Lessee faithfully performs all of its obligations hereunder. Lessor will have no responsibility or liability to Lessee for any failure of the Dispatch Equipment or any direct or consequential damages arising there from, including without limitation any damages for any interruption in the Lessee's business occasioned or caused by an inability to use the Dispatch Equipment for any reason; provided, however, that Lessor will use its commercially reasonable best efforts to make available to Lessee substitute or replacement components to minimize Lessee's down time as a result of any failure of the Dispatch Equipment.

6. _Parties' Relationship._ The relationship between the parties created by this Agreement shall be that of lessee and lessor. Nothing contained in this Agreement shall be construed to constitute Lessee or Lessor as an agent, partner or joint ⧸ enture of the other, it being intended that the parties in all respects hereunder be lessee or lessor relative to each other, and separately responsible for their own actions and the actions of any of their respective agents, servants, and/or employees.

Unless expressly authorized by the other in writing, neither party shall have any authority to make any contract, agreement, warranty or representation, or in any way to bind the other to any obligation or liability whatsoever. Lessee agrees not to take any action or file any claim or tax return that is inconsistent with Lessee's status as a sole proprietor or incorporated entity, whichever the case may be.

Lessee is solely responsible for the safe and lawful operation of the Taxicab. Lessee shall have full responsibility for the payment of all federal, state and local taxes and contributions and any penalties and interest attributable to all remuneration earned from its business, including among others, those taxes or contributions imposed or required pursuant to unemployment insurance, social security, income tax and workers' compensation. In addition, Lessee, shall be solely responsible for any liability to third parties resulting from (i) the negligent or intentional

acts or omissions of Lessee, its agents and employees, or (ii) the services provided to the public by Lessee or a driver engaged by Lessee to operate Lessee's vehicle.

Lessee hereby acknowledges that Lessor does not offer Lessee any protection or indemnification from or against any risks associated with the public transportation business, including, but not limited to, the risk of personal injury to a driver or others. All claims against Lessor and its affiliates, employees, officers, owners, agents, representatives, successors and assigns relating to or arising out of such risks are hereby irrevocably waived by Lessee.

7.     Indemnification.  Lessee shall indemnify and hold harmless Lessor and its affiliates, officers, owners, employees, owners and agents from and against any and all liabilities, damages, fines, penalties, costs, claims, demands and expenses (including costs of defense, settlement and reasonable attorneys' fees) of whatever type or nature, including damage to or destruction of any property, or injury to or the death of any person, to the extent arising out of (a) Lessee's acts or omissions in the conduct of its business including, without limitation, any claim of injury or wrongful death relating to any drivers of its vehicle, passengers or any other party injured in the course of the conduct of the Lessee's business; (b) the manufacture, delivery, possession, maintenance, condition (including without limitation latent and other defects whether or not discoverable by Lessor), use, operation, control, loss, damage, destruction, removal, return, storage, surrender, leasing, sale or other disposition of the Dispatch Equipment; or (c) the breach or default by Lessee of this Agreement or any applicable federal, state or local law, statute, regulation, rule, ordinance or government directive governing or applicable to Lessee's performance of this Agreement.  The indemnity obligation of the Lessee pursuant to this Paragraph 7 shall survive the expiration or other termination of this Agreement.

8.     Security.  To secure the performance by Lessee of all its obligations hereunder (including but not limited to the Lessee's obligation to make the payments provided by Paragraphs 2 and 3 hereof), Lessee hereby grants to Lessor a security interest in and to (a) the Taxicab or any replacement vehicle in which the Dispatch Equipment is installed, (b) Lessee's rights as a licensee to conduct its business which may be embodied in and known as a taxicab "medallion," (c) all rights of Lessee in the Dispatch Equipment to the extent not reserved to Lessor hereunder, (d) any membership rights in 303 Taxi, L.L.C. d/b/a 303 Cab Association] and ∈ all enhancements, replacements, accessories and proceeds of any of the foregoing (collectively, the "Collateral").  Lessee agrees that Lessor may prepare and file financing statements in order to perfect its security interest in the Collateral. Lessee agrees to sign such documents as may be necessary to evidence Lessor's security interest in Lessee's taxicab in the Illinois vehicle title records.

9.     Breach.  Any of the following shall constitute a breach hereof:

(g)     Any failure of Lessee to pay when due any amounts required to be paid under this Agreement;

(b)     Lessee becoming insolvent, being subject to any proceedings under the bankruptcy or insolvency laws or entering into an assignment

3

for the benefit of creditors, or Lessee's property being placed under the custody of a receiver or trustee;

(c)      Death, disability or dissolution of Lessee;

(d)      The sale, acquisition, merger or change of the majority ownership of Lessee;

€      Failure of Lessee and/or any drivers of its vehicle to at all times during the Term hereof be properly licensed pursuant to all applicable state and municipal laws and regulations;

(h)      The theft, loss, destruction or substantial damage to or alteration of the Collateral, whether in whole or in part;

(i)      The sale, transfer or misuse of the Collateral; or

(j)      Lapse of any insurance required herein or by applicable laws or regulations.

10.     <u>Remedies and Termination</u>. In the event of a breach of this Agreement by Lessee, Lessor shall have the right to immediately terminate this Agreement by giving written notice to Lessee. Upon such termination, Lessor shall, in addition to any other rights or remedies provided by law, have the right, without notice to Lessee, to take possession of the Collateral wherever found, and for this purpose Lessor and/or its agents may enter upon any property or premises of or under the control or jurisdiction of Lessee or any agent of Lessee without liability for suit, action or other proceedings by Lessee (any damages occasioned by such repossession being hereby expressly waived by Lessee) and remove the Collateral there from. Additionally, as to any item of Collateral, Lessor shall have all rights and remedies provided to secured creditors under the Illinois Uniform Commercial Code. In the event of the occurrence of a material breach of this Agreement by Lessor, which is continuing, Lessee shall give Lessor written notice of such breach. Lessor shall thereafter have as much time as may be necessary to cure such breach, provided that Lessor shall diligently prosecute such cure. If such cure is not effected within 30 days of the date of Lessee's written notice of the breach, Lessee shall have the option to terminate this Agreement by giving Lessor written notice of such termination.

11.     <u>Insurance</u>. Lessee shall obtain and maintain during the Term hereof insurance in such forms and amounts, with such carriers, and insuring against such risks as may be reasonably specified and approved by Lessor, naming Lessor as an additional insured. Such insurance coverage shall include, but not necessarily be limited to, three hundred thousand dollars ($300,000) in liability coverage. Lessee shall supply Lessor with certificates of insurance evidencing such coverage from time to time throughout the Term hereof. Lessee shall also maintain such coverage for a three (3) year period following the expiration or other termination of this Agreement in order to protect the Lessor (which shall continue to be an additional insured

for such period) as to any claims filed during that period which arise out of occurrences during the Term hereof.

  12. <u>General</u>.

  (k) <u>Nature of Agreement</u>.  This Agreement is a bona fide lease and gives Lessee no property interest or rights in the Dispatch Equipment other than the right of possession expressly granted herein.

  (b) <u>No Waiver and No Assignment</u>.  No delay on the part of either party in the exercise of any right or remedy shall operate as a waiver thereof, and no single or partial exercise by either party of any right or remedy shall preclude other or further exercise thereof or the exercise of any other right or remedy.  The waiver of any breach or condition of this Agreement by either party shall not constitute a precedent in the future enforcement of any of the terms and conditions of this Agreement.  Lessee may not assign this Agreement without the prior written consent of Lessor, which consent may be withheld at the sole discretion of Lessor.  Subject to the foregoing, this Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, estates, legal representatives, successors and assigns.  This Agreement shall not be binding on Lessor until an original, duly executed on behalf of Lessor, is delivered to the Lessee.  Tender of an unsigned copy of this Agreement shall not be deemed an offer and Lessor reserves the right to refuse to enter into this Agreement for any reason it deems appropriate in the exercise of its discretion.

  (c) <u>Further Assurances</u>.  Each party agrees to cooperate with the other and to execute and deliver all such additional documents and instruments, and to take all such other actions, as the other party may reasonably request from time to time to fully effectuate the provisions and purposes of this Agreement.

  (d) <u>Notices</u>.  All correspondence, invoices or notices required or permitted hereunder or process relating hereto shall be in writing and signed by an officer or authorized agent of the party giving notice or sending such correspondence or invoices, and shall be deemed to have been given when hand-delivered by personal delivery or by Federal Express or similar courier service, when received by electronic facsimile transmission (with the confirmation message slip generated by the sending facsimile machine, if any, creating a rebuttable presumption of such receipt), or upon receipt if sent by United States mail, registered or certified, with postage prepaid, return receipt requested, addressed as follows:

  If to Lessor, at:

  9696 W. Foster Ave
  Chicago, IL 60656
  Attention: Henry Elizar
  Fax: <u>847-368-8940</u>

If to Lessee, at:

_____

_____

Attention: _____

Facsimile: _____

or to such other address or facsimile number as either party may designate for itself by notice given to the other party from time to time in accordance with the provisions hereof.

        €        Governing Law; Forum Selection. This Agreement is being negotiated, executed and delivered in the State of Illinois, and the validity, interpretation, construction and enforceability of this Agreement shall be governed in all respects by the laws of the United States, where applicable, and the internal laws (but not the laws of conflicts) of the State of Illinois. Any proceeding or suit instituted or commenced with respect to this Agreement shall be brought in a federal or state court having its situs in the City of Chicago, Illinois. The parties hereby consent to the jurisdiction and venue of said courts and waive any objections they may have based on the doctrine of forum non-conveniens.

        (f)        Third Parties. Nothing herein expressed or implied is intended or shall be construed to confer upon or give any person or entity, other than the parties hereto and their respective permitted successors and assigns, any rights or remedies under or by reason of this Agreement.

        (g)        Attorneys Fees. In the event that either party brings an action or proceeding against the other party to enforce the provisions of this Agreement or to recover damages as a result of a breach of this Agreement or from any other cause arising out of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees from the losing party in addition to costs and disbursements.

        (l)        Authorization. The individuals signing below on behalf of any entity hereby personally represent and warrant that they are duly authorized to execute and deliver this Agreement on behalf of such entity and that the entity will thereby be bound by this Agreement, which will be enforceable against such entity in accordance with the terms hereof.

**[SIGNATURE PAGE TO FOLLOW]**
IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the day and year first written above.

Date:  01/09/2012

LESSEE:                                    LESSOR:

_____                    _____

7

## Sarah Albrecht

**From:** Sarah Albrecht
**Sent:** Monday, August 04, 2014 12:20 PM
**To:** 'Joel F. Handler'
**Cc:** Michael Urgo
**Subject:** 303 Taxi adv. Hayhurst; Our file No.: F-4625
**Attachments:** 7.18.14 Counsel Let re Lease Agreement F-4625.pdf

Joel,

Attached is our July 17, 2014 letter seeking the voluntary dismissal of 303 Taxi because it is simply a dispatch company. We have not received a response from you. Please contact me to discuss the matter.

Sincerely,

Sarah E. Albrecht
Urgo & Nugent, Ltd.
2 N. LaSalle St., Suite 1800
Chicago, IL 60602
Phone: (312)263-6635
Fax: (312)263-1329
e-mail: salbrecht@urgoandnugentltd.com



EXHIBIT
C

1

**URGO & NUGENT, LTD.**
ATTORNEYS AT LAW
TWO NORTH LASALLE STREET
SUITE 1800
CHICAGO, IL 60602
TELEPHONE (312) 263-6635
FACSIMILE (312) 263-1329

330 South Naperville Road Ste. 240
Wheaton, IL 60187
Telephone (630) 653-0123

IN REPLY
Refer to File No.: **F-4625**

August 22, 2014

Mr. Joel F. Handler
One East Wacker Drive, Suite 510
Chicago, IL 60601
jhandlerlawgroup.com

**Via regular mail and e-mail**

Re:    Hayhurst v. Bieliaukas, et al.
       Court no.: 14 CV 2196

Dear Mr. Handler,

Attached please find a copy of our July 17, 2014 correspondence with attached dispatch and equiptment lease agreement between 303 Taxi, LLC and Jaroslavas Bieliaukas which makes clear that 303 Taxi had no control over Mr. Bieliaukas and that Mr. Bieliaukas was not acting as an employee or agent of 303 Taxi at the time of the accident. As such, we again request that you voluntarily dismiss 303 Taxi from this lawsuit.

I am also attaching our e-mail of August 4, 2014 through which we again requested that you voluntarily dismiss 303 Taxi, LLC. We have not yet received a response.

I am also attaching a copy of the certificate of insurance and other relevant documents indicating that a policy of insurance was issued to Bieliaukas which covered the date of the accident, and which were previously provided to you in response your request for production of documents.

I ask that you voluntarily dismiss 303 Taxi, LLC from this lawsuit within the next seven (7) days, so that we can avoid the time expense associated with a motion to dismiss. Thank you in advance for your anticipated cooperation, and don't hesitate to contact me with any questions or comments.

Very truly yours,

Sarah E. Albrecht

EXHIBIT
D

MJU/SEA

## Sarah Albrecht

**From:** Sarah Albrecht
**Sent:** Friday, August 22, 2014 1:36 PM
**To:** jhandler@handlerlawgroup.com
**Cc:** Michael Urgo
**Subject:** 303 Taxi adv. Hayhurst; Our file No.: F-4625
**Attachments:** counsel ltr. 8.22.2014.pdf

Joel,

Per our discussion today and in light of the very short notice, Mr. Bieliauskas will not be available for his deposition on August 22, 2014. In addition, he will need a Russian interpreter. Again, we cannot take the plaintiff's deposition until we receiver copies of all of her medical records. Subpoenas have been issued and we recently began receiving some, but not all, responses.

Per our discussion, I await your demand.

I am also attaching a copy of the letter that will be mailed to you today requesting the voluntary dismissal of 303 Taxi, LLC which is merely a dispatch company which had no control over Mr. Bieliauskas who was neither its employee or agent.

Don't hesitate to contact me or Mr. Urgo with any questions or comments.

Sincerely,

Sarah E. Albrecht
Urgo & Nugent, Ltd.
2 N. LaSalle St., Suite 1800
Chicago, IL 60602
Phone: (312)263-6635
Fax: (312)263-1329
e-mail: salbrecht@urgoandnugentltd.com

1

# CERTIFICATE OF LIABILITY INSURANCE

**ACORD®**

| | DATE (MM/DD/YYYY) |
|---|---|
| | 3/1/2013 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Stephen Bosy | | |
|---|---|---|---|
| Eastern Cab Insurance Agency<br>5200 N. Otto<br>Chicago, IL 60656 | PHONE (A/C, No, Ext): 312-705-1133 | | FAX (A/C, No): 312-781-0973 |
| | E-MAIL ADDRESS: sbosy@buplic.com | | |
| www.buplic.com | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| INSURED | INSURER A: Starnet Insurance Company | | 40045 |
| Jaroslavas Bieliauskas<br>320 W Ivy Ln<br>Arlington Heights IL 60004-3038 | INSURER B: | | |
| | INSURER C: | | |
| | INSURER D: | | |
| | INSURER E: | | |
| | INSURER F: | | |

## COVERAGES     CERTIFICATE NUMBER: 15526444     REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | | | | | | | GENERAL AGGREGATE | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | | $ |
| A | **AUTOMOBILE LIABILITY** | | | CAA6601935 | 1/1/2013 | 1/1/2014 | COMBINED SINGLE LIMIT (Ea accident) | $ 350,000 |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ ALL OWNED AUTOS ☑ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ☐ NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ **UMBRELLA LIAB** ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ **EXCESS LIAB** ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| | | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**   Y / N | | | | | | ☐ WC STATU-TORY LIMITS ☐ OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? ☐ N/A | | | | | | E.L. EACH ACCIDENT | $ |
| | (Mandatory in NH) If yes, describe under | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| A | UM/UIM | | | CAA6601935 | 1/1/2013 | 1/1/2014 | $40,000 CSL | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

Cab No.: 344   Plate No. 28830TX Vehicle Year/Make/Model: 2010 CHRYSLER T & C   Vehicle VIN No.: 2A4RR5D1XAR286592
Should any of the above policies be cancelled before the expiration date shown above, the issuing Insurer will mail a written notice 10 days in advance of cancellation to the certificate holder named below.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| S.O.S. Taxi/Livery Dept<br>5401 N. Elston Ave<br>Chicago IL 60630 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE<br>*[signature]*<br>Jeffrey Spratt |

© 1988-2010 ACORD CORPORATION.

**EXHIBIT E**

ACORD 25 (2010/05)     The ACORD name and logo are registered marks of ACORD

CERT No.: 15526444   CLIENT CODE: 2013 - 2014   Tom Deshardo 3/1/2013 7:16:32 AM Page 1 of 1

POLICY NUMBER:
CAA 6601935-11

**COMMERCIAL AUTO**
**CA DS 03 03 06**

## BUSINESS AUTO DECLARATIONS

StarNet Insurance Company

**ITEM ONE**

| Named Insured & Mailing Address: | Agent Name & Address: 10011 |
|---|---|
| JAROSLAVAS BIELIAUSKAS<br>320 W. IVY LN<br>ARLINGTON HEIGHTS, IL 60004 | (847)368-8928<br><br>Eastern Insurance Agency<br>5200 North Otto Avenue<br>Chicago, IL 60656-1011 |

| Policy Period | |
|---|---|
| **From:** January 1, 2013 | |
| **To:** January 1, 2014 | At 12:01 A.M. Standard Time at your mailing address. |
| **Previous Policy Number:** | CAA 6601935-10 |

**Form Of Business:** [ ] Corporation [ ] Limited Liability Company [X] Individual
[ ] Partnership [ ] Other:

In return for the payment of the premium, and subject to all the terms of this policy,
we agree with you to provide the insurance as stated in this policy.

Premium shown is for policy period above. $ █████████

**Audit Period**
**(If Applicable):** [ ] Annually [ ] Semi-Annually [ ] Quarterly [ ] Monthly

### Endorsements Attached To This Policy:

IL 00 03 - Calculation of Premium
IL 00 17 - Common Policy Conditions (IL 01 46 in Washington)
IL 00 21 - Broad Form Nuclear Exclusion (not applicable in New York)
IL 78 40 IL - Policyholder and Applicant Notice - Civil Unions - Illinois

CADS7725 (08-09), CA0001 (03-06), CA0120 (06-03), CA0270 (08-94), CA2001 (03-06),
CA2018 (12-93), CA2130 (11-08), CA2384 (01-06), CA2394 (03-06), CA7510 (08-06),
CA7533 (08-09), CA7540IL (10-11), CA7801IL (05-11), CA9954 (07-97).
ILDS7701 (04-11), IL0162 (09-08).

| Countersignature Of Authorized Representative |
|---|
| Name: |
| Title: |
| Signature: |
| Date: |

CA DS 03 03 06
Original

ISO Properties, Inc., 2005

Page 1

**ITEM TWO**

**Schedule Of Coverages And Covered Autos**

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos Section of the Business Auto Coverage Form next to the name of the coverage.

| Coverages & Limits | Covered Autos | Premium |
|---|---|---|
| **Liability**<br>Limit = $ 350,000 CSL | 10 | $ ████████ |
| **Personal Injury Protection**<br>**(Or Equivalent No-Fault Coverage)**<br>Limit = Separately Stated In Each PIP Endorsement<br>Minus $            Deductible. | | $ |
| **Added Personal Injury Protection**<br>**(Or Equivalent Added No-Fault Coverage)**<br>Limit = Separately Stated In Each Added PIP<br>Endorsement | | $ |
| **Extraordinary Medical Benefits**<br>Limit = Separately Stated in each Extraordinary<br>Medical Benefit Endorsement | | $ |
| **Auto Medical Payments**<br>Limit = $ | | $ |
| **Medical Expense And Income Loss Benefits**<br>**(Virginia Only)**<br>Limit = Separately Stated In Each Medical Expense<br>And Income Loss Benefits Endorsement | | $ |
| **Uninsured Motorists**<br>Limit = $ 40,000 CSL | 10 | $ ████████ |
| **Underinsured Motorists**<br>**(When Not Included In Uninsured Motorists Coverage)**<br>Limit = $ | | $ |
| **Supplementary Uninsured Motorists**<br>Limit = $<br>The maximum amount payable under SUM Coverage shall<br>be the policy's SUM limits reduced and thus offset<br>by motor vehicle bodily injury liability insurance<br>policy or bond payments received from, or on behalf<br>of, any negligent party involved in the accident as<br>specified in the SUM endorsement. | | $ |

ISO Properties, Inc., 2005                    CA DS 03 03 06

**ITEM TWO**

**Schedule Of Coverages And Covered Autos (Continued)**

| Coverages & Limits | Covered Autos | Premium |
|---|---|---|
| **Physical Damage Comprehensive Coverage**<br>Limit = Actual Cash Value Or Cost Of Repair,<br>Whichever Is Less, Minus<br>$_____ Deductible For Each Covered<br>Auto, But No Deductible Applies To Loss<br>Caused By Fire Or Lightning.<br>See Item Four For Hired Or Borrowed Autos. | | $ |
| **Physical Damage Specified Causes Of Loss Coverage**<br>Limit = Actual Cash Value Or Cost Of Repair,<br>Whichever Is Less, Minus<br>$_____ Deductible For Each Covered<br>Auto For Loss Caused By Mischief<br>Or Vandalism.<br>See Item Four For Hired Or Borrowed Autos. | | $ |
| **Physical Damage Collision Coverage**<br>Limit = Actual Cash Value Or Cost Of Repair,<br>Whichever Is Less, Minus<br>$_____ Deductible For Each Covered<br>Auto.<br>See Item Four For Hired Or Borrowed Autos. | | $ |
| **Physical Damage Towing And Labor**<br>Limit = $_____ For Each Disablement Of A<br>Private Passenger Auto. | | $ |
| Premium For Endorsements | | $ |
| Estimated Total Premium * | | $ ▬▬▬▬▬ |
| *This Policy May Be Subject To Final Audit. | | |

*SEE ENDORSEMENT CA9954

CA DS 03 03 06　　　　　　ISO Properties, Inc., 2005　　　　　　**Page 3**
Original

**ITEM THREE - Schedule Of Covered Autos You Own**

| Veh No. | DESCRIPTION (Year, Model, VIN) | | Original Cost New | Stated Amount |
|---|---|---|---|---|
| 1 | 2010 CHRYSLER TOWN & COU | 2A4RR5D1XAR266592 | $ | $ |

| Veh No. | Code | Radius (Miles) | CLASSIFICATION Use | Size (GVW) | TERRITORY (Principal Garage Location) |
|---|---|---|---|---|---|
| 1 | 4159 | | | | ARLINGTON HEIGHTS    IL  Terr: 115 |

**COVERAGES**

| Veh No. | CSL Limit* | Personal Injury Protection Ded    Addl | Extra Med Limit* | Med Pay Limit | Medical Expense & Income Loss | Uninsured (UM) Limit* | Underinsured (UIM) Limit* | SUM Limit* |
|---|---|---|---|---|---|---|---|---|
| 1 | 350 | | | | 40 | | | |

\* Limits Shown Are In Thousands
\*\* Refer to ITEM TWO for Detail of Split Limits

**PREMIUMS**

| Veh No. | CSL | Basic PIP | Addl PIP | Extra Med | Med Pay | Med Exp & Income | UM | UIM | SUM |
|---|---|---|---|---|---|---|---|---|---|
| 1 | $ ▮▮▮ | | | | | | ▮▮▮ | | |

| Veh No. | PHYSICAL DAMAGE COVERAGE Deductibles Comp    Spec    Coll Peril | | Towing & Labor Limit | PHYSICAL DAMAGE PREMIUMS Comp | Spec Peril | Coll | Towing & Labor | TOTAL PREMIUM |
|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | $ ▮▮▮ |

**LOSS PAYEES**

| Veh No. | Except for Towing, All Physical Damage Loss Is Payable To You And The Loss Payee Named Below As Interests May Appear At The Time Of The Loss |
|---|---|

ISO Properties, Inc., 2005          CA DS 03 03 06

**ITEM FOUR**

**Schedule Of Hired Or Borrowed Covered Auto Coverage And Premiums**

| Liability Coverage - Rating Basis, Cost Of Hire | | | | |
|---|---|---|---|---|
| State | Estimated Cost Of Hire For Each State | Rate Per Each $100 Cost Of Hire | Factor (If Liability Coverage Is Primary) | Premium |
| | | $ | | $ |

| Liability Coverage - Rating Basis, Number Of Days - (For Mobile Or Farm Equipment - Rental Period Basis) | | | | |
|---|---|---|---|---|
| State | Estimated Number Of Days Equipment Will Be Rented | Base Premium | Factor | Premium |
| | | $ | | $ |
| | | | Total Premium | $ |

Cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

**Physical Damage Coverage**

| Coverages | Limit Of Insurance | | |
|---|---|---|---|
| Comprehensive | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus $ Deductible For Each Covered Auto, But No Deductible Applies To Loss Caused By Fire Or Lightning. | | |
| | Estimated Annual Cost Of Hire | Rate Per Each Annual Cost Of Hire ████ | Premium |
| | $ | $ | $ |
| Specified Causes Of Loss | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus $ Deductible For Each Covered Auto For Loss Caused By Mischief Or Vandalism. | | |
| | Estimated Annual Cost Of Hire | Rate Per Each Annual Cost Of Hire ████ | Premium |
| | $ | $ | $ |
| Collision | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus $ Deductible For Each Covered Auto. | | |
| | Estimated Annual Cost Of Hire | Rate Per Each Annual Cost Of Hire ████ | Premium |
| | $ . | $ | $ |

| Total Premium: | | $ |
|---|---|---|

**ITEM FIVE**

**Schedule For Non-Ownership Liability**

| Named Insured's Business | Rating Basis | Number | Premium |
|---|---|---|---|
| Other Than Garage Service Operations And Other Than Social Service Agencies | Number Of Employees | | $ |
| | Number Of Partners | | $ |
| Garage Service Operations | Number Of Employees Whose Principal Duty Involves The Operation Of Autos | | $ |
| Social Service Agencies | Number Of Employees | | $ |
| | Number Of Volunteers | | $ |
| | Total Premiums | | $ |

**ITEM SIX**

**Schedule For Gross Receipts Or Mileage Basis - Liability Coverage - Public Auto Or Leasing Rental Concerns**

| Location No: | | |
|---|---|---|
| (Check One) | Gross Receipts (Per ████ | Mileage (Per Mile) |
| Estimated Yearly: | | |
| Rates | | |
| Liability | $ | |
| Auto Medical Payments | $ | |
| Medical Expense Benefits (VA Only) | $ | |
| Income Loss Benefits (VA Only) | $ | |
| Premiums | | |
| Liability | $ | |
| Auto Medical Payments | $ | |
| Medical Expense Benefits (VA Only) | $ | |
| Income Loss Benefits (VA Only) | $ | |

ISO Properties, Inc., 2005

CA DS 03 03 06

| Total Premiums | |
|---|---|
| Minimum Liability | $ |
| Minimum Auto Medical Payments | $ |
| Minimum Medical Expense Benefits (VA Only) | $ |
| Minimum Income Loss Benefits (VA Only) | $ |
| Liability | $ |
| Auto Medical Payments | $ |
| Medical Expense Benefits (VA Only) | $ |
| Income Loss Benefits (VA Only) | $ |

| Location Number | Address |
|---|---|
| | |

When used as a premium basis:

FOR PUBLIC AUTOS

Gross Receipts means the total amount to which you are entitled for transporting passengers, mail or merchandise during the policy period regardless of whether you or any other carrier originate the transportation. Gross Receipts does not include:

A.  Amounts you pay to railroads, steamship lines, airlines and other motor carriers operating under their own ICC or PUC permits.

B.  Advertising revenue.

C.  Taxes which you collect as a separate item and remit directly to a governmental division.

D.  C.O.D. collections for cost of mail or merchandise including collection fees.

Mileage means the total live and dead mileage of all revenue producing units operated during the policy period.

FOR RENTAL OR LEASING CONCERNS

Gross receipts means the total amount to which you are entitled for the leasing or rental of "autos" during the policy period and includes taxes except those taxes which you collect as a separate item and remit directly to a governmental division.

Mileage means the total of all live and dead mileage developed by all the "autos" you leased or rented to others during the policy period.

CAA 6601935 - 11          01/01/13          SSC          01/25/13

## SCHEDULE OF "INSURED(S)"

This Schedule continues Item One of the Declarations of this policy.

The following person(s) and/or organization(s) are authorized driver "insured(s)":

| No: | Name of Authorized Driver(s): | DOB: | DL#: |
|-----|-------------------------------|------|------|
| 001 | JAROSLAVAS          BIELIAUSKAS | 05/21/1978 | B42242078145 |

Copyright 2009 StarNet Insurance Company
Includes material copyrighted by ISO Properties, Inc., with its permission

CAA  6601935 - 11        01/01/13        SSC        01/25/13

**SCHEDULE OF "INSURED(S)"**

Each person or organization shown in the Schedule below is an "insured" for Liability Coverage,
but only to the extent that person or organization qualifies as an "insured" under the Who Is
An Insured Provision contained in **Section II - Liability Coverage** of the Coverage Form.

**No:    Name of "insured" person(s) or organization(s):**

Copyright 2009 StarNet Insurance Company
Includes material copyrighted by ISO Properties, Inc., with its permission                    CA DS 77 25 08 09


INSURANCE COMPANY

PROGRAM ADMINISTRATOR:

A Berkley Company A Stock Company
Domicile Office: Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801
Home Office: 475 Steamboat Road, Greenwich, CT 06830
Underwriting Office: 311 South Wacker Drive, Suite 3225, Chicago, IL 60606 (312) 368-1107

IN WITNESS WHEREOF, StarNet Insurance Company has executed and attested these presents.

Secretary

President

IL DS 77 01 04 11      &#9702; 2011 StarNet Insurance Company      Page 1 of 1

IL 00 21 09 08

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

   (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

   (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

   (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2007

IL 00 21 09 08

IL 01 62 09 08

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ILLINOIS CHANGES – DEFENSE COSTS

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART  LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART  MORTGAGEHOLDERS ERRORS AND OMISSIONS
COVERAGE FORM
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK COVERAGE PART

A. The provisions of Paragraph B. are added to all Insuring Agreements that set forth a duty to defend under:

1. Section I of the Commercial General Liability, Commercial Liability Umbrella, Employment-Related Practices Liability, Farm, Liquor Liability, Owners And Contractors Protective Liability, Pollution Liability, Products/Completed Operations Liability, Product Withdrawal, Medical Professional Liability, Railroad Protective Liability, Underground Storage Tank Coverage Parts and the Farm Umbrella Liability Policy;

2. Section II  Liability Coverage In Paragraph A. Coverage under the Business Auto, Garage, Motor Carrier and Truckers Coverage Forms;

3. Section A. Coverage under the Legal Liability Coverage Form; and

4. Coverage C  Mortgageholder's Liability under the Mortgageholders Errors And Omissions Coverage Form.

B. If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that the claim(s) is (are) not covered under this insurance, we will have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement for the defense costs under this provision will only apply to defense costs we have incurred after we notify you in writing that there may not be coverage, and that we are reserving our rights to terminate the defense and seek reimbursement for defense costs.

    © ISO Properties, Inc., 2007       □

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. Please read this Notice carefully.

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

    ] Foreign agents;

    ] Front organizations;

    ] Terrorists;

    ] Terrorist organizations; and

    ] Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site    http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

           ⁶ ISO Properties, Inc., 2004           

# POLICYHOLDER AND APPLICANT NOTICE   CIVIL UNIONS,   ILLINOIS

NO COVERAGE IS PROVIDED BY THIS NOTICE. YOU SHOULD READ YOUR POLICY AND ALL OF THE ENDORSEMENTS FOR COMPLETE INFORMATION ON THE COVERAGES YOU ARE PROVIDED.

THIS NOTICE HAS BEEN PREPARED IN CONJUNCTION WITH THE PASSAGE OF THE RELIGIOUS FREEDOM PROTECTION AND CIVIL UNION ACT ("THE ACT")  750 ILCS 75/1

Effective on 1 June 2011 The Religious Freedom Protection and Civil Union Act, 750 ILCS 75/1 became effective in Illinois. Under this statute certain terms used in insurance policies have been changed as follows:

A. The term spouse, w  henever that term appears in a policy or in an application for insurance coverage for any person resident in Illinois, includes a party to a civil union recognized under Illinois law.

B. The term "family member" whenever that term appears in a policy or in an application for insurance coverage for any person resident in Illinois, includes a party to a civil union recognized under Illinois law.

SHOULD YOU HAVE ANY QUESTIONS REGARDING THIS NOTICE PLEASE CONTACT YOUR PRODUCER.

COMMERCIAL AUTO
CA 00 01 03 06

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V Definitions.

## SECTION I -COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

A. Description Of Covered Auto Designation Symbols

| Symbol | | Description Of Covered Auto Designation Symbols |
|---|---|---|
| 1 | Any "Auto" | |
| 2 | Owned "Autos" Only | Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| 3 | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| 4 | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| 5 | Owned "Autos" Subject To No-Fault | Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have No-Fault benefits in the state where they are licensed or principally garaged. |
| 6 | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| 7 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| 8 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| 9 | Nonowned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs. |

© ISO Properties, Inc., 2005

| 19 | Mobile Equipment Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |
|----|---|---|

**B. Owned Autos You Acquire After The Policy Begins**

1. If Symbols 1, 2, 3, 4, 5, 6 or 19 are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol 7 is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos**

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. "Loss"; or

   e. Destruction.

**SECTION II –LIABILITY COVERAGE**

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

1. Who Is An Insured

   The following are "insureds":

   a. You for any covered "auto".

   b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

      (1) The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

© ISO Properties, Inc., 2005
CA 00 01 03 06          □

(2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

(3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

(4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

(5) A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

2. Coverage Extensions

a. Supplementary Payments

We will pay for the "insured":

(1) All expenses we incur.

(2) Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

(3) The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

(4) All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

(5) All costs taxed against the "insured" in any "suit" against the "insured" we defend.

(6) All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

b. Out-Of-State Coverage Extensions

While a covered "auto" is away from the state where it is licensed we will:

(1) Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

(2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

B. Exclusions

This insurance does not apply to any of the following:

1. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

2. Contractual

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

a. Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

b. That the "insured" would have in the absence of the contract or agreement.

3. Workers' Compensation

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

4. Employee Indemnification And Employer's Liability

"Bodily injury" to:

a. An "employee" of the "insured" arising out of and in the course of:

(1) Employment by the "insured"; or

(2) Performing the duties related to the conduct of the "insured's" business; or

b. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph a. above.

This exclusion applies:

(1) Whether the "insured" may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

5. Fellow Employee

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

6. Care, Custody Or Control

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

7. Handling Of Property

"Bodily injury" or "property damage" resulting from the handling of property:

a. Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

b. After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

8. Movement Of Property By Mechanical Device

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

9. Operations

"Bodily injury" or "property damage" arising out of the operation of:

a. Any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment"; or

b. Machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

10. Completed Operations

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraph a. or b. above.

Your work will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

11. Pollution

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

 © ISO Properties, Inc., 2005 CA 00 01 03 06 □

(2) Otherwise in the course of transit by or on behalf of the "insured"; or

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

Paragraphs b. and c. above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

12. War

"Bodily injury" or "property damage" arising directly or indirectly out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

13. Racing

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

C. Limit Of Insurance

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage Endorsement, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

SECTION III – PHYSICAL DAMAGE COVERAGE

A. Coverage

1. We will pay for "loss" to a covered "auto" or its equipment under:

a. Comprehensive Coverage

From any cause except:

(1) The covered "auto's" collision with another object; or

(2) The covered "auto's" overturn.

b. Specified Causes Of Loss Coverage

Caused by:

(1) Fire, lightning or explosion;

(2) Theft;

(3) Windstorm, hail or earthquake;

(4) Flood;

(5) Mischief or vandalism; or

(6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

c. **Collision Coverage**

Caused by:

(1) The covered "auto's" collision with another object; or

(2) The covered "auto's" overturn.

2. **Towing**

We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage –Hitting A Bird Or Animal – Falling Objects Or Missiles**

If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

a. Glass breakage;

b. "Loss" caused by hitting a bird or animal; and

c. "Loss" caused by falling objects or missiles.

However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**

a. **Transportation Expenses**

We will pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

b. **Loss Of Use Expenses**

For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

(1) Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

(2) Specified Causes Of Loss only if the Declarations indicate that Specified Causes of Loss Coverage is provided for any covered "auto"; or

(3) Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

B. **Exclusions**

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

a. **Nuclear Hazard**

(1) The explosion of any weapon employing atomic fission or fusion; or

(2) Nuclear reaction or radiation, or radioactive contamination, however caused.

b. **War Or Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

3. We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

a. Wear and tear, freezing, mechanical or electrical breakdown.

b. Blowouts, punctures or other road damage to tires.

4. We will not pay for "loss" to any of the following:

a. Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

 © ISO Properties, Inc., 2005 CA 00 01 03 06 □

b. Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

c. Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

d. Any accessories used with the electronic equipment described in Paragraph c. above.

Exclusions 4.c. and 4.d. do not apply to:

a. Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

b. Any other electronic equipment that is:

(1) Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

(2) An integral part of the same unit housing any sound reproducing equipment described in Paragraph a. above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

5. We will not pay for "loss" to a covered "auto" due to "diminution in value".

C. Limit Of Insurance

1. The most we will pay for "loss" in any one "accident" is the lesser of:

a. The actual cash value of the damaged or stolen property as of the time of the "loss"; or

b. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

2. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

3. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

D. Deductible

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

SECTION IV - BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

A. Loss Conditions

1. Appraisal For Physical Damage Loss

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

2. Duties In The Event Of Accident, Claim, Suit Or Loss

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

a. In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

(1) How, when and where the "accident" or "loss" occurred;

(2) The "insured's" name and address; and

(3) To the extent possible, the names and addresses of any injured persons and witnesses.

b. Additionally, you and any other involved "insured" must:

(1) Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

(2) Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

(4) Authorize us to obtain medical records or other pertinent information.

(5) Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

c. If there is "loss" to a covered "auto" or its equipment you must also do the following:

(1) Promptly notify the police if the covered "auto" or any of its equipment is stolen.

(2) Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

(3) Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

(4) Agree to examinations under oath at our request and give us a signed statement of your answers.

3. Legal Action Against Us

No one may bring a legal action against us under this Coverage Form until:

a. There has been full compliance with all the terms of this Coverage Form; and

b. Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

4. Loss Payment –Physical Damage Coverages

At our option we may:

a. Pay for, repair or replace damaged or stolen property;

b. Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

c. Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

5. Transfer Of Rights Of Recovery Against Others To Us

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

B. General Conditions

1. Bankruptcy

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

2. Concealment, Misrepresentation Or Fraud

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

a. This Coverage Form;

b. The covered "auto";

c. Your interest in the covered "auto"; or

d. A claim under this Coverage Form.

3. Liberalization

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

4. No Benefit To Bailee –Physical Damage Coverages

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

© ISO Properties, Inc., 2005

CA 00 01 03 06    □

5. **Other Insurance**

a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

(1) Excess while it is connected to a motor vehicle you do not own.

(2) Primary while it is connected to a covered "auto" you own.

b. For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

c. Regardless of the provisions of Paragraph a. above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

d. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

6. **Premium Audit**

a. The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

b. If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

7. **Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

a. During the policy period shown in the Declarations; and

b. Within the coverage territory.

The coverage territory is:

a. The United States of America;

b. The territories and possessions of the United States of America;

c. Puerto Rico;

d. Canada; and

e. Anywhere in the world if:

(1) A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

(2) The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico, or Canada or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

8. **Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

## SECTION V -DEFINITIONS

A. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

B. "Auto" means:

1. A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

2. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

D. "Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

2. Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured";

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph 6.b. or 6.c. of the definition of "mobile equipment".

Paragraphs b. and c. above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

E. "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

F. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

G. "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

H. "Insured contract" means:

1. A lease of premises;

2. A sidetrack agreement;

3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

© ISO Properties, Inc., 2005

CA 00 01 03 06

4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

6. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

   a. That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing; or

   b. That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

   c. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

I. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

J. "Loss" means direct and accidental loss or damage.

K. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. Power cranes, shovels, loaders, diggers or drills; or

   b. Road construction or resurfacing equipment such as graders, scrapers or rollers.

5. Vehicles not described in Paragraph 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   b. Cherry pickers and similar devices used to raise or lower workers.

6. Vehicles not described in Paragraph 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   a. Equipment designed primarily for:

      (1) Snow removal;

      (2) Road maintenance, but not construction or resurfacing; or

      (3) Street cleaning;

   b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

L. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

M. "Property damage" means damage to or loss of use of tangible property.

 © ISO Properties, Inc., 2005

N. "Suit" means a civil proceeding in which:

1. Damages because of "bodily injury" or "property damage"; or

2. A "covered pollution cost or expense",

to which this insurance applies, are alleged.

"Suit" includes:

a. An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

O. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

P. "Trailer" includes semitrailer.

© ISO Properties, Inc., 2005

CA 00 01 03 06

COMMERCIAL AUTO
CA 01 20 06 03

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ILLINOIS CHANGES

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Illinois, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

A. Changes In Liability Coverage

1. Paragraph 1.b.(3) of the Who Is An Insured provision in the Business Auto, Motor Carrier and Truckers Coverage Forms and Paragraph 3.a.(2)(c) of the Who Is An Insured provision in the Garage Coverage Form do not apply.

2. Our Limit Of Insurance applies except that we will apply the limit shown in the Declarations to first provide the separate limits required by the Illinois Safety Responsibility Law as follows:

   a. $20,000 for "bodily injury" to any one person caused by any one "accident",

   b. $40,000 for "bodily injury" to two or more persons caused by any one "accident", and

   c. $15,000 for "property damage" caused by any one "accident".

   This provision will not change our total Limit Of Insurance.

B. Changes In Physical Damage Coverage

The Limit Of Insurance provision with respect to repair or replacement resulting in better than like kind or quality is replaced by the following, and supersedes any provision to the contrary:

We may deduct for betterment if:

1. The deductions reflect a measurable decrease in market value attributable to the poorer condition of, or prior damage to, the vehicle.

2. The deductions are for prior wear and tear, missing parts and rust damage that is reflective of the general overall condition of the vehicle considering its age. In this event, deductions may not exceed $500.

C. Changes In Conditions

The Other Insurance Condition in the Business Auto Coverage Form, and the Other Insurance – Primary And Excess Insurance Provisions in the Truckers and Motor Carriers Coverage Forms, is changed by the addition of the following:

Liability Coverage provided by this Coverage Form for any "auto" you do not own is primary if:

1. The "auto" is owned or held for sale or lease by a new or used vehicle dealership;

2. The "auto" is operated by an "insured" with the permission of the dealership described in Paragraph 1. while your "auto" is being repaired or evaluated; and

3. The Limit of Insurance for Liability Coverage under this policy is at least:

   a. $100,000 for "bodily injury" to any one person caused by any one "accident",

   b. $300,000 for "bodily injury" to two or more persons caused by any one "accident", and

   c. $50,000 for "property damage" caused by any one "accident".

© ISO Properties, Inc., 2002

COMMERCIAL AUTO
CA 02 70 08 94

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ILLINOIS CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

A. The CANCELLATION COMMON POLICY Condition is replaced by the following:

CANCELLATION

a. The first Named Insured shown in the Declarations may cancel this policy by mailing us advance written notice of cancellation.

b. When this policy is in effect 61 days or more or is a renewal or continuation policy, we may cancel only for one or more of the following reasons by mailing you written notice of cancellation stating the reasons for cancellation.

(1) Nonpayment of premium.

(2) The policy was obtained through a material misrepresentation.

(3) Any "insured" has violated any of the terms and conditions of the policy.

(4) The risk originally accepted has measurably increased.

(5) Certification to the Director of Insurance of the loss of reinsurance by the insurer which provided coverage to us for all or a substantial part of the underlying risk insured.

(6) A determination by the Director of Insurance that the continuation of the policy could place us in violation of the Illinois insurance laws.

c. If we cancel for nonpayment of premium, we will mail you at least 10 days written notice.

d. If this policy is cancelled for other than nonpayment of premium and the policy is in effect:

(1) 60 days or less, we will mail you at least 30 days written notice.

(2) 61 days or more, we will mail you at least 60 days written notice.

e. If this policy is cancelled, we will send you any premium refund due.  If we cancel, the refund will be pro rata.  If you cancel, the refund may be less than pro rata.  The cancellation will be effective even if we have not made or offered a refund.

f. The effective date of cancellation stated in the notice shall become the end of the policy period.

g. Our notice of cancellation will state the reason for cancellation.

h. A copy of the notice will also be sent to your agent or broker and the loss payee.

Copyright, Insurance Services Office, Inc., 1994

B. The following is added and supersedes any provision to the contrary:

NONRENEWAL

If we decide not to renew or continue this policy, we will mail you, your agent or broker and the loss payee written notice, stating the reason for nonrenewal, at least 60 days before the end of the policy period. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

C. MAILING OF NOTICES

We will mail cancellation and nonrenewal notices to the last addresses known to us. Proof of mailing will be sufficient proof of notice.

Copyright, Insurance Services Office, Inc., 1994

CA 02 70 08 94

CAA 6601935 - 11    01/01/13    SSC    01/25/13

POLICY NUMBER:                                    COMMERCIAL AUTO
CAA 6601935-11                                    CA 20 01 03 06

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## LESSOR - ADDITIONAL INSURED AND LOSS PAYEE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Named Insured: JAROSLAVAS BIELIAUSKAS |
| Endorsement Effective Date: 01/01/2013 |
| Countersignature Of Authorized Representative |
| Name: |
| Title: |
| Signature: |
| Date: |

### SCHEDULE

| | |
|---|---|
| Insurance Company: | StarNet Insurance Company |
| Policy Number: | CAA 6601935-11 | Effective Date: | 01/01/2013 |
| Expiration Date: | 01/01/2014 |
| Named Insured and Address: | JAROSLAVAS BIELIAUSKAS<br>320 W. IVY LN<br>ARLINGTON HEIGHTS, IL 60004 |

Additional Insured (Lessor) and Address:

1. S.O.S
   TAXI & LIVERY DEPT
   5401 N. ELSTON ST
   CHICAGO, IL  60630

2. 303 TAXI LLC
   5200 N. OTTO
   CHICAGO, IL  60656

3. KRAFT FOODS GLOBAL INC
   3 LAKES DRIVE
   NORTHFIELD, IL  60093

Designation Or Description Of "Leased Autos":

Any vehicle leased, rented or borrowed by the Named Insured.

CA 20 01 03 06          Copyright - ISO Properties, Inc., 2005          Page 1 of 2

CAA 6601935 - 11    01/01/13    SSC    01/25/13

| Coverages | Limit of Insurance |
|---|---|
| Liability | $                    Each "Accident" |
| Comprehensive | Actual Cash Value Or Cost Of Repair Whichever Is Less, Minus<br>$         Deductible For Each Covered "Leased Auto" |
| Collision | Actual Cash Value Or Cost Of Repair Whichever Is Less, Minus<br>$         Deductible For Each Covered "Leased Auto" |
| Specified<br>Causes Of Loss | Actual Cash Value Or Cost Of Repair Whichever Is Less, Minus<br>$         Deductible For Each Covered "Leased Auto" |
| Information required to complete this Schedule, if not shown above, will be shown<br>in the Declarations. | |

**A. Coverage**

    1. Any "leased auto" designated or described in the Schedule will be considered a covered "auto" you own and not a covered "auto" you hire or borrow.

    2. For a "leased auto" designated or described in the Schedule, **Who Is An Insured** is changed to include as an "insured" the lessor named in the Schedule. However, the lessor is an "insured" only for "bodily injury" or "property damage" resulting from the acts or omissions by:

        a. You;

        b. Any of your "employees" or agents; or

        c. Any person, except the lessor or any "employee" or agent of the lessor, operating a "leased auto" with the permission of any of the above.

    3. The coverages provided under this endorsement apply to any "leased auto" described in the Schedule until the expiration date shown in the Schedule, or when the lessor or his or her agent takes possession of the "leased auto", whichever occurs first.

**B. Loss Payable Clause**

    1. We will pay, as interest may appear, you and the lessor named in this endorsement for "loss" to a "leased auto".

    2. The insurance covers the interest of the lessor unless the "loss" results from fraudulent acts or omissions on your part.

    3. If we make any payment to the lessor, we will obtain his or her rights against any other party.

**C. Cancellation**

    1. If we cancel the policy, we will mail notice to the lessor in accordance with the Cancellation Common Policy Condition.

    2. If you cancel the policy, we will mail notice to the lessor.

    3. Cancellation ends this agreement.

**D.** The lessor is not liable for payment of your premiums.

**E. Additional Definition**

    As used in this endorsement:

    "Leased auto" means an "auto" leased or rented to you, including any substitute, replacement or extra "auto" needed to meet seasonal or other needs, under a leasing or rental agreement that requires you to provide direct primary insurance for the lessor.

CAA  6601935 - 11        01/01/13        SSC        01/25/13

CA 20 18 12 93

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**PROFESSIONAL SERVICES NOT COVERED**

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

LIABILITY COVERAGE is changed by adding the following exclusions:

This insurance does not apply to:

1. "Bodily injury" resulting from the providing or the failure to provide any medical or other professional services.

2. "Bodily injury" resulting from food or drink furnished with these services.

3. "Bodily injury" or "property damage" resulting from the handling of corpses.

Copyright, Insurance Services Office, Inc., 1993        CA 20 18 12 93

CAA  6601935 – 11        01/01/13        SSC        01/25/13

CA 21 30 11 08

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ILLINOIS UNINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in Illinois, this endorsement modifies insurance provided under the following:

    BUSINESS AUTO COVERAGE FORM
    GARAGE COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM
    TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

Named Insured: JAROSLAVAS BIELIAUSKAS

Endorsement Effective Date: 01/01/2013

### SCHEDULE

Limit Of Insurance  $      40,000                    Each "Accident"

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

A. Coverage

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

B. Who Is An Insured

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

   a. The Named Insured and any "family members".

   b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   c. Anyone else "occupying" an "auto" you do not own who is an "insured" for Liability under the Coverage Form, but only at times when that person is an "insured" for Liability under the Coverage Form.

   d. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

   a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   b. Anyone else "occupying" an "auto" you do not own who is an "insured" for Liability under the Coverage Form, but only at times when that person is an "insured" for Liability under the Coverage Form.

   c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

C. **Exclusions**

This insurance does not apply to any of the following:

1. Any claim settled without our consent.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. "Bodily injury" sustained by:

   a. An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form;

   b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form; or

   c. Any "family member" while "occupying" or when struck by any vehicle owned by the Insured that is insured for Uninsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

4. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

5. Punitive or exemplary damages.

6. "Bodily injury" arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

D. **Limit Of Insurance**

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit of Insurance for Uninsured Motorists Insurance shown in the Schedule or Declarations.

   We will apply the limit shown in the Declarations to first provide the separate limits required by the Illinois Safety Responsibility Law as follows:

   a. $20,000 for "bodily injury" to any one person caused by any one "accident"; and

   b. $40,000 for "bodily injury" to two or more persons caused by any one "accident".

   This provision will not change our total limit of liability.

2. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage Form, Medical Payments Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

   We will not make a duplicate payment under this Coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

   We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

E. **Changes In Conditions**

The Conditions are changed for Uninsured Motorists Insurance Coverage as follows:

1. **Other Insurance** in the Business Auto and Garage Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Truckers and Motor Carrier Coverage Forms are replaced by the following:

   If there is other applicable insurance available under one or more policies or provisions of coverage:

Copyright, Insurance Services Office, Inc., 2008       CA 21 30 11 08

a. The maximum recovery under all coverage forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any coverage form or policy providing coverage on either a primary or excess basis.

b. Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis.

c. If the coverage under this Coverage Form is provided:

(1) On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

(2) On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

2. **Duties In The Event Of Accident, Claim, Suit Or Loss** is changed by adding the following:

a. Promptly notify the police if a hit-and-run driver is involved; and

b. Promptly send us copies of the legal papers if a "suit" is brought.

3. **Legal Action Against Us** is replaced by the following:

a. No one may bring a legal action against us under this Coverage Form until there has been full compliance with all the terms of this Coverage Form.

b. Any legal action against us must be brought within two years after the date of the "accident". However, this Paragraph 3.b. does not apply to an "insured" if, within two years after the date of the "accident", arbitration proceedings have commenced in accordance with the provisions of this Coverage Form.

4. **Transfer Of Rights Of Recovery Against Others To Us** does not apply.

5. The following Conditions are added:

**REIMBURSEMENT AND TRUST**

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

**ARBITRATION**

a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages, then the disagreement will be arbitrated. If the "insured" requests, we and the "insured" will each select an arbitrator. The two arbitrators will select a third. If the arbitrators are not selected within 45 days of the "insured's" request, either party may request that arbitration be submitted to the American Arbitration Association. We will bear all the expenses of the arbitration except when the "insured's" recovery exceeds the minimum limit specified in the Illinois Safety Responsibility Law.

If this occurs, the "insured" will be responsible for payment of his or her expenses and an equal share of the expenses of the third arbitrator up to the amount by which the "insured's" recovery exceeds the statutory minimum.

b. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives.

c. If arbitration is submitted to the American Arbitration Association, then the American Arbitration Association rules shall apply to all matters except medical opinions. As to medical opinions, if the amount of damages being sought:

(1) Is equal to or less than the minimum limit for bodily injury liability specified by the Illinois Safety Responsibility Law, then the American Arbitration Association rules shall apply.

(2) Exceeds the minimum limit for bodily injury liability specified by the Illinois Safety Responsibility Law, then rules of evidence that apply

in the circuit court for placing medical opinions into evidence shall apply.

In all other arbitration proceedings, local rules of law as to arbitration procedure and evidence will apply.

d. If the arbitration involves three arbitrators, a decision agreed to by two of the arbitrators will be binding for the amount of damages not exceeding the lesser of either.

(1) $50,000 for "bodily injury" to any one person/$100,00 for "bodily injury" to two or more persons caused by any one "accident"; or

(2) The Limit Of Uninsured Motorists Insurance shown in the Schedule or Declarations.

**F. Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to an individual Named Insured by blood, marriage or adoption who is a resident of such Named Insured's household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Uninsured motor vehicle" means a land motor vehicle or "trailer":

a. For which no liability bond or policy at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged; or

b. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

c. That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit, or cause an object to hit, an "insured", a covered "auto" or a vehicle an "insured" is "occupying". If there is no physical contact with the hit-and-run vehicle, the facts of the "accident" must be proved.

However, "uninsured motor vehicle" does not include any vehicle:

a. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

b. Owned by a governmental unit or agency; or

c. Designed for use mainly off public roads while not on public roads.

 Copyright, Insurance Services Office, Inc., 2008 CA 21 30 11 08

COMMERCIAL AUTO
CA 23 84 01 06

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
SINGLE INTEREST AUTOMOBILE PHYSICAL DAMAGE INSURANCE POLICY
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

A. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury, damage, loss or expense, are enclosed in quotation marks:

1. "Terrorism" means activities against persons, organizations or property of any nature:

   a. That involve the following or preparation for the following:

      (1) Use or threat of force or violence; or

      (2) Commission or threat of a dangerous act; or

      (3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

   b. When one or both of the following applies:

      (1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

      (2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. "Any injury, damage, loss or expense" means any injury, damage, loss or expense covered under any Coverage Form or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal injury", "personal and advertising injury", "loss", loss of use, rental reimbursement after "loss" or "covered pollution cost or expense", as may be defined under this Coverage Form, Policy or any applicable endorsement.

B. Except with respect to Physical Damage Coverage, Trailer Interchange Coverage, Garagekeepers Coverage, Garagekeepers Coverage Customers' Sound Receiving Equipment or the Single Interest Automobile Physical Damage Insurance Policy, the following exclusion is added:

EXCLUSION OF TERRORISM

We will not pay for "any injury, damage, loss or expense" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury, damage, loss or expense" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury, damage, loss or expense. But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs B.5. and B.6. are exceeded.

With respect to this Exclusion, Paragraphs B.5. and B.6. describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form, Policy or any applicable endorsement.

C. With respect to Physical Damage Coverage, Trailer Interchange Coverage, Garagekeepers Coverage, Garagekeepers Coverage Customers' Sound Receiving Equipment or the Single Interest Automobile Physical Damage Insurance Policy, the following exclusion is added:

EXCLUSION OF TERRORISM

We will not pay for any "loss", loss of use or rental reimbursement after "loss" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the threshold in Paragraph C.5. is exceeded.

© ISO Properties, Inc., 2004    CA 23 84 01 06    □

With respect to this Exclusion, Paragraph C.5. describes the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form, Policy or any applicable endorsement.

D. In the event of any incident of "terrorism" that is not subject to the Exclusion in Paragraphs B. or C., coverage does not apply to "any injury, damage, loss or expense" that is otherwise excluded under this Coverage Form, Policy or any applicable endorsement.

CA 23 84 01 06 © ISO Properties, Inc., 2004 Page 3 of 3 □

COMMERCIAL AUTO
CA 23 94 03 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SILICA OR SILICA-RELATED DUST EXCLUSION FOR COVERED AUTOS EXPOSURE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

A. The following exclusion is added to Paragraph B. Exclusions of Section II —Liability Coverage in the Business Auto, Motor Carrier and Truckers Coverage Forms and for "Garage Operations" — Covered "Autos" in the Garage Coverage Form:

SILICA OR SILICA-RELATED DUST EXCLUSION FOR COVERED AUTOS EXPOSURE

This insurance does not apply to:

1. "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

2. "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

3. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any "insured" or by any other person or entity.

B. Additional Definitions

As used in this endorsement:

1. "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

2. "Silica-related dust" means a mixture or combination of silica and other dust or particles.

© ISO Properties, Inc., 2005

# ENDORSEMENT – EXCLUDING PUNITIVE, EXEMPLARY, OR MULTIPLIED DAMAGES

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

SECTION II   Liability Coverage   Item B., Exclusions   The following exclusion is added:

EXCLUSION   This insurance does not apply to:

1. Punitive, exemplary, or multiplied damages;

2. Sanctions, fines, or penalties imposed by common or statutory law;

3. Liquidated damages as provided under a contract or statute;

If a claim or sui t i s made against any insured f or an acci dent se eking compensatory and punitive, exemplary, or multiplied damages, we will defend the insured.  However, we will not pay for any Supplementary Payments, or damages attributable to punitive, exemplary or multiplied damages.

This exclusion does not apply in any state where such provision is expressly prohibited by state law or regulation.

THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE POLICY IS WRITTEN.

# ENDORSEMENT – PUBLIC AUTO COVERAGE AMENDMENTS

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

    BUSINESS AUTO COVERAGE FORM
    GARAGE COVERAGE FORM
    MOTOR CARRIERS COVERAGE FORM
    TRUCKERS COVERAGE FORM

A. SECTION II   Liability Coverage   Item A, Coverage, Paragraph 1, Who Is An Insured is entirely deleted and replaced with the following:

  1. Who Is An Insured   The i nsureds f or any covered auto are:

    a. The person(s) or organization(s) named in the Declarations; and

    b. Anyone liable for the conduct of any i nsured descri bed in paragraph a, above but only to the extent of that liability.

    No other person or organization is an i nsured under thi s policy. However, other persons or organizations may be named in the Declarations or by endorsement. These other persons or organizations will be considered as other i nsured(s) under thi s insurance.

B. SECTION II   Liability Coverage   Paragraph 2, Coverage Extensions item a, Supplementary Payments subparagraph (5) is entirely deleted and replaced with the following:

    (5) All costs taxed against the i nsured i n any sui t agai nst the i nsured w e defend. However, these payments do not include attorneys fees or attorney s expenses taxed against the i nsured.

C. SECTION II   Liability Coverage   Paragraph B, Exclusions the following exclusions are added:

  1. S exual Misconduct, S exual Abuse, or Molestation   B odily injury , property damage , or cov ered pollution cost or expense  arising directly or indirectly out of any sexual  misconduct, sexual  abuse, or molestation by any  insured .

  2. "Animal(s)"   B odily injury , property damage , or cov ered pollution cost or expense  arising out of animal(s)  at any premises, garage operati ons or i n or on any covered auto  of any i nsured.

    However, wherever required by statute, we will exclude bodi ly injury , property  damage , or cov ered pollution cost or expense  but only to the extent of any limits of insurance which are in excess over the minimum required financial responsibility, minimum personal injury protection (or equivalent no-fault coverage), or minimum compulsory limits of insurance within the state where the premises, garage operations, or cov ered auto i  s licensed or principally garaged.

  3. Passengers Acts   B odily injury ,  property damage , or cov ered pollution cost or expense  caused by the acts or omissions of a passenger in your publ ic auto busi ness.

  4. Assault and / or Battery   B odily injury, property  damage, or cov  ered pollution cost or expense  arising out of or alleged to arise out of assault and / or battery, including but not limited to:

    a. Verbal or non-verbal threats or arguments;

    b. Physical contact with another person without their consent; or

    c. Vehicular assault or battery or the fear of or apprehension of vehicular assault or battery.

    This exclusion applies even if the claims against any i nsured al lege negligence or other wrongdoing in the supervision, hiring, employment, training, discipline, or monitoring of em ployees  or other persons by the i nsured, i f the  accident  which caused the  bodily injury ,  property damage , or cov ered pollution cost or expense i nvolved any of the elements of assault and/or battery described in subparagraphs a, b, or c, above.

  5. Firearms   B odily injury, property  damage, cov  ered pollution cost or expense, or l  oss ari sing out of the possession, display, or use of a firearm by any i nsured  or passenger.

# ENDORSEMENT – PUBLIC AUTO COVERAGE AMENDMENTS

6. Use of a Covered "A uto" for S now Removal   B odily injury, property   damage, or cov ered pollution cost or expense ar ising out of any snow removal activity.

7. S poliation of Property"   P roperty damage i ncluding the intentional alteration or destruction of a document or other property by any i nsured.

D. SECTION V   Definitions   The following definitions are added:

1. A nimal(s)  includes any mammal, amphibian, reptile, insect, arachnid, bird, or live stock and includes but is not limited to animals used to guard premises, autos, as w ell as animal pets regardless of what person or organization owns, harbors, controls, or possesses the animal(s).

2. Other i nsured(s) m ean persons or organizations which may be responsible for the conduct of any i nsured but do not operate or ow n any covered auto.   Other i nsured(s) i nclude, but are not limited to governmental organizations which issue permits to operate publ ic auto(s), grantor(s) of  franchise for publ ic auto(s), and / or publ ic auto di spatch organizations.

3. P ublic auto m eans a taxicab, limousine, coach, omnibus, or similar auto l icensed by the state where the publ ic auto i s principally garaged or used, for the purpose of transporting passengers and passenger s personal effects to points and places for a fee.

4. S exual misconduct  means any type of actual, alleged, attempted, proposed, or threatened physical touching, caressing, or sexual verbal or nonverbal suggestion by any insured to any other person, including but not limited to any other insured or any past, present, or potential passenger or family member or relative of a passenger of any insured.

5. S poliation m eans:

   a. The destruction, alteration, or mutilation of evidence especially by a party for whom the evidence is damaging; or

   b. Alteration or mutilation of an instrument by one who is not a party to the instrument; or

   c. Willful or intentional destruction of property.

THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE POLICY IS WRITTEN.

© 2009 StarNet Insurance Company
Includes material copyrighted by ISO Properties, Inc., with its permission

# ENDORSEMENT   RISK PURCHASING GROUP   ILLINOIS

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under:

   BUSINESS AUTO COVERAGE FORM

This policy has been issued as part of the Foster Purchasing Group Association, an Illinois Corporation.

THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE POLICY IS WRITTEN.

CA 75 40 IL 10 11                StarNet Insurance Company                Page 1 of 1

POLICYHOLDER NOTICE – CLAIMS REPORTING

## StarNet Insurance Company
### A Berkley Company

Please notify the Companys claims office by telephone of every acci dent  or loss imm  ediately upon the occurrence.
Use the telephone number: **1-866-391-9675**

Any delay in providing the Company with notice may jeopardize your claim rights.
Please send a written claim report using the forms attached as soon as practicable by mail or by E-mail to:

### York Risk Services Group, Inc.
### 2170 West State Road 434, Suite 494
### Longwood, FL 35779-5034
### E-mail: 5356BerkleyTransport@yorkrsg.com

Policy#:_____

Named Insured:                                     Tel#:

Complete this form in case of emergency and keep with the public  auto.

## StarNet Insurance Company
### A Berkley Company

Please notify the Companys claims office by telephone of every acci dent  or loss imm  ediately upon the occurrence.
Use the telephone number: **1-866-391-9675**

Any delay in providing the Company with notice may jeopardize your claim rights.
Please send a written claim report using the forms attached as soon as practicable by mail or by E-mail to:

### York Risk Services Group, Inc.
### 2170 West State Road 434, Suite 494
### Longwood, FL 35779-5034
### E-mail: 5356BerkleyTransport@yorkrsg.com

Policy#:_____

Named Insured:                                     Tel#:

Complete this form in case of emergency and keep with your policy form.

## IMPORTANT NOTICE – ILLINOIS

### IMPORTANT NOTICE

This notice is to advise you that should any complaint arise regarding the insurance you may contact any of the following organizations:

You may contact StarNet Insurance Company at their Home Office for information or to make a complaint at:

475 Steamboat Road
Greenwich Connecticut 06830
or
c/o Berkley Underwriting Partners, LLC Underwriting Manager
311 South Wacker Drive, Suite 3225
Chicago, Illinois 60606 Telephone: 312-368-1107 Facsimile: 312-583-1633

You may contact the Illinois Division of Insurance at:

Illinois Division of Insurance, Consumer Division or Public Services Section
Springfield, Illinois 62767

Please be certain to retain this notice with the policy and other important papers relating to your insurance.

THIS NOTICE DOES NOT MODIFY OR AMEND ANY OF CONDITIONS OF YOUR POLICY. THIS NOTICE IS TO PROVIDE YOU WITH INFORMATION ONLY.

CAA 6601935 - 11    01/01/13    SSC    01/25/13

POLICY NUMBER:                                    COMMERCIAL AUTO
CAA 6601935-11                                    CA 99 54 07 97

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**COVERED AUTO DESIGNATION SYMBOL**

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below:

Endorsement effective: 01/01/2013

Named Insured: JAROSLAVAS BIELIAUSKAS

Countersigned by: _____
                        (Authorized Representative)

**Section I - Covered Autos** is amended by adding the following:

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols may be used (in addition to the numerical symbols described in the Coverage Form) to describe the "autos" that may be covered "autos". The entry of one of these symbols next to a coverage on the Declarations will designate the only "autos" that are covered "autos".

**Symbol        Description Of Covered Auto Designation Symbols**

| | | |
|---|---|---|
| | | For use with the Business Auto Coverage Form |
| 10 | = | Only "autos" under your operating authority, in service as of the effective date of this policy which are listed on the Schedule attached to the policy and which were at the time of the "accident" giving rise to the claim being driven by a driver who is listed as an "insured" on the Schedule of "Insured(s)" to the policy are covered. No coverage will apply to any "auto" newly placed in service, after the policy begins, or for any substitute "auto" until you report that "auto" to us. Coverage on any such "auto" newly placed in service or used as a temporary substitute "auto" will only become effective as of the date and time it is reported to us. |
| | | For use with the Garage Coverage Form |
| 32 | = | |
| | | For use with the Truckers Coverage Form |
| 51 | = | |
| 52 | = | |
| | | For use with the Business Auto Physical Damage Coverage Form |
| 7 | = | |
| | | For use with the Motor Carrier Coverage Form |
| 72 | = | |
| 73 | = | |

IL 00 03 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

    CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    CRIME AND FIDELITY COVERAGE PART
    EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
    EQUIPMENT BREAKDOWN COVERAGE PART
    FARM COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

CAA 6601935 - 11     01/01/13     SSC     01/25/13

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998                    IL 00 17 11 98

## Sarah Albrecht

| | |
|---|---|
| **From:** | Sarah Albrecht |
| **Sent:** | Monday, August 04, 2014 12:20 PM |
| **To:** | 'Joel F. Handler' |
| **Cc:** | Michael Urgo |
| **Subject:** | 303 Taxi adv. Hayhurst; Our file No.: F-4625 |
| **Attachments:** | 7.18.14 Counsel Let re Lease Agreement F-4625.pdf |

Joel,

Attached is our July 17, 2014 letter seeking the voluntary dismissal of 303 Taxi because it is simply a dispatch company. We have not received a response from you. Please contact me to discuss the matter.

Sincerely,

Sarah E. Albrecht
Urgo & Nugent, Ltd.
2 N. LaSalle St., Suite 1800
Chicago, IL 60602
Phone: (312)263-6635
Fax: (312)263-1329
e-mail: salbrecht@urgoandnugentltd.com



1

MJU/SEA                                F-4625

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

HELEN HAYHURST,                              )
                                             )
                      Plaintiff,             )
                                             )
vs.                                          )        Court No.: 14 CV 2196
                                             )
303 TAXI, LLC and JAROSLAVAS BIELIAUSKAS,    )
Individually and as agent of 303 TAXI, LLC, )
                                             )
                      Defendants.            )

### AFFIDAVIT OF ANRE NISENBOIM

      I, Anre Nisenboim, on behalf of 303 TAXI, LLC, being first duly sworn on oath, do state and depose that I have personal knowledge of all facts in this affidavit and if called to testify, I could testify competently to the following.

1.    That I am the General Manager of 303 TAXI, LLC and am authorized to speak on behalf of same.

2.    303 TAXI, LLC is a taxi dispatch company which leases certain dispatch equipment for use of taxi drivers.

3.    JAROSLAVAS BIELIAUSKAS was not an employee of 303 TAXI, LLC on or about June 10, 2013.

4.    303 TAXI, LLC did not pay salary to JAROSLAVAS BIELIAUSKAS.

5.    303 TAXI, LLC did not withhold taxes on behalf of JAROSLAVAS BIELIAUSKAS.

6.    303 TAXI, LLC had no authority to determine the hours that the cab was operated by JAROSLAVAS BIELIAUSKAS.

7.    303 TAXI, LLC had no authority to determine which customers JAROSLAVAS BIELIAUSKAS picked up.

8.    303 TAXI, LLC had no right to share in any profits or losses made through the use of the medallion or the cab by JAROSLAVAS BIELIAUSKAS.



EXHIBIT
G

9.   JAROSLAVAS BIELIAUSKAS was not required to report the location of the cab while driving, maintain a trip sheet, keep a written record of fares, or report fares collected to 303 TAXI, LLC

10.  303 TAXI, LLC was not the owner of the vehicle operated by JAROSLAVAS BIELIAUSKAS at aforesaid time.

11.  303 TAXI, LLC did not pay for gas usage during cab operations nor controlled where gas could be purchased by JAROSLAVAS BIELIAUSKAS.

12.  303 TAXI, LLC was not responsible for maintenance of vehicle and did not require JAROSLAVAS BIELIAUSKAS to use specific maintenance services.

FURTHER AFFIANT SAYETH NAUGHT.


STATE OF ILLINOIS       )
                        )   SS
COUNTY OF COOK          )

This instrument was signed before me on _December 1_, 2014

by _Ann Eisenbein_                                    .

_Lillian Podunavac_

> OFFICIAL SEAL
> LILLIAN PODUNAVAC
> Notary Public - State of Illinois
> My Commission Expires Feb 25, 2017